John G. HOLCOMB and Ruth E. Holcomb, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 76–1015.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1976.

Decided Aug. 24, 1976.

William F. Kolbe, Racine, Wis., for plaintiffs-appellants.

Scott P. Crampton, Asst. Atty. Gen., Elmer J. Kelsey, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CLARK, Associate Justice, Retired,* PELL and TONE, Circuit Judges.

CLARK, Associate Justice.

In this appeal John G. and Ruth E. Holcomb, husband and wife, complain of the entry of a summary judgment against them for the balance unpaid of $19,008.34 on a 100% penalty assessment of $40,019.51 levied against them under 26 U.S.C. § 6672 for failure to pay the withholding taxes for the last two quarters of 1968 and the first quarter of 1969 due by Lakeshore Transit-Kenosha, Inc. (Lakeshore). John G. Holcomb was the President and Mrs. Holcomb was the Vice President of Lakeshore. They started this litigation in which a jury was demanded, by filing suit against the United States for a refund of $3327.22 previously paid by them on the assessment and the government filed a counterclaim for the balance due.

The Holcombs alleged in the refund claim theretofore filed with the Internal Revenue Service and upon which this suit was filed that they did not wilfully fail to collect, truthfully account and pay over the withholding taxes and were not the persons responsible for the collection, accounting and payment thereof. In their suit they initially alleged that the actions of the government in assessing and collecting the deficiency in the withholding taxes were improper, illegal and erroneous. Thereafter they amended their complaint to include a plea that the government's 1968 assessments were barred by limitation and that certain credits paid through the subsequent bankruptcy of Lakeshore were not credited according to an agreement between the parties. The reason no limitation plea was specifically alleged in both the claim for refunds before the Commissioner and initially in their complaint in the District Court, the Holcombs claim, was because they had been advised by the Internal Revenue Service through a conference report dated March 24, 1972, that the statute of limitations on the assessments would not expire until April 15, 1973. While the Holcombs had no specific recollection of making any extensions, they assumed the government was right. However, after repeated requests for copies failed to produce them, the Holcombs again asked for the copies at pre-trial and were told by the government that they were misplaced and had not been located. It was only then that the Holcombs filed a motion for summary judgment based on the statute of limitations. The government subsequently filed its motion for summary judgment, still without the waivers.

I

█ The day before the trial hearing commenced the government produced what it asserted were the two waivers of the statute of limitation, one covering Mr. Holcomb and the other his wife. Each was on an IRS form 2750, *Waiver Extending Statutory Period of Assessment of 100% Penalty,* one being signed by John G. Holcomb as President of Lakeshore and the other by Mrs. Holcomb as its Vice President. In separate affidavits each of the Holcombs stated that when requested by N.R. DeMark, a Revenue Officer, to sign the forms they both refused to sign individually but offered to sign on behalf of Lakeshore, the

---

* Honorable Tom C. Clark, Associate Justice, Supreme Court of the United States, Retired, is sitting by designation.

corporation. The Revenue Officer then showed them where to sign as officers on behalf of the Lakeshore Corporation, assuring them that they were only waiving the statute for the corporation. After each plaintiff had signed a waiver form in the place indicated by the Revenue Officer, the latter then added their corporate titles after each of their signatures. Subsequently, the affidavit stated—out of the presence of the Holcombs—the Revenue Officer or some one else unknown to them drew an arrow from each of the taxpayer's signatures up the side of form 2750 to the line provided on the form for individual taxpayers, thereby indicating that the Holcombs had signed on the wrong line through mistake or inadvertence. The Holcombs offered this proof at the hearing claiming that the extensions were void and advising the court that the 2750 extension form "does present a jury issue and I wouldn't think . . . it'd be appropriate for us to continue to ask the court for summary judgment on that issue." The District Court then proceeded to deny the Holcombs' motion for summary judgment, stating that the changes on the form 2750 were "hypertechnical and immaterial" and granted summary judgment for the government on the ground of variance between the administrative claim and complaint, together with a finding that the Holcombs were both responsible persons under § 6672. We agree with the Holcombs that it was error for the court to so decide the summary judgments in light of this factual conflict.

## II

In further defense of the government's cross action the Holcombs alleged that on March 23, 1972, at a conference with Internal Revenue Officers they were induced to agree to pay $300 a month for nine months, or until the proceeds of the bankruptcy of Lakeshore were distributed, on the withholding tax deficiencies pursuant to which the government would first apply the bankruptcy receipts on the penalty assessments against the Holcombs. Although they made nine such payments plus a $627.22 1972 income tax refund of the

Holcombs withheld by the government, the latter refused to first apply the bankruptcy receipts on the penalty assessments. The Holcombs at the time of trial advised the District Court through their counsel "on the allocation of the bankruptcy proceeds we should be able to show in defense of the counterclaim that the government received the money in the bankruptcy proceeding which it had agreed to apply against these personal liabilities, and it failed to do so; that there was consideration for that agreement and the government should be held to it." We agree that it was error to grant the government's motion for summary judgment on this point, in view of this claim.

## III

While Mr. Holcomb has not appealed from the finding as to his being a responsible person for the collection and payment of the withholding taxes under § 6672, his wife has done so. As to Mrs. Holcomb's liability the District Court found that Mr. Holcomb had stated in his deposition that "only he and Ruth signed corporate checks"; and Ruth stated in her deposition that "she participated in making corporate decisions, signed checks, was an officer of the corporation, co-signed loans made to the corporation, made final decisions for the corporation with Mr. Holcomb and also that she knew there were unpaid corporate tax liabilities."

However, a careful reading of her deposition reveals that Mrs. Holcomb was a temporary telephone operator, filling in for a sick employee, and never performed any work for Lakeshore until the fall of 1968, some six months before its demise; that while she had been Vice President since its incorporation she was neither an organizer, a director or a stockholder of the Company. She never worked on, handled, signed or filed any corporate tax returns, payrolls or withholding reports; she made no basic decisions, and there is no proof that she had any knowledge of the withholding taxes being unpaid, although she knew that Lake-

shore was in financial trouble, as any wife would know under the circumstances here. It is true that "toward the end" of the operation she did sign a few checks; however, no showing was made of the purposes, the amounts, the dates, nor that any withholding taxes were past due at the time she signed the checks. In fact, Lakeshore had a bookkeeper and payroll clerk and there was no evidence Mrs. Holcomb had ever talked with him about any corporate matter or had anything to do with his department. The District Court cited *Monday v. United States,* 421 F.2d 1210 (1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970), a case from this Circuit, as authority for holding Mrs. Holcomb a responsible person; but it is a far cry from the facts here. There Robert Monday, president of the corporation, had been told that withholding taxes had not been paid and admitted that he had read the CPA report reflecting such delinquencies. However, he had testified that he did not know of the tax arrearage until soon before the Company was thrown into receivership and that he thought the deficiency had been paid in full through a $4500 loan he had obtained from his sister. A panel of this court ordered a new trial as to Robert Monday on this conflict in the evidence. Moreover, the holding in *Monday* that the government is not obliged to credit bankruptcy funds so as to reduce penalty assessments is not apposite. Here the claim is that the government agreed to so credit the bankruptcy proceeds; without such an agreement there would be no obligation. In light of these considerations we are also obliged to reverse as to the finding against Mrs. Holcomb that she was a responsible person under § 6672. As with the other claims this was also a matter for the jury.

### IV

Both the government and the District Court place their main reliance for the denial of the Holcombs' claim for refund on the fatal variance between the grounds alleged in the claim for refund and those now asserted. It is true that a claim for refund must fairly apprise the Commissioner of the grounds on which recovery is sought. *Herrington v. United States,* 416 F.2d 1029, 1032 (10th Cir. 1969). However, the Holcombs claim that they were misled by the report of the IRS that the statute had been extended for a year. Whether this is either true or sufficient grounds for estopping the government we cannot say. The meager facts before us indicate that the matter may well turn out to be an estoppel. If, on remand the Holcombs insist on their refund claim they will have to show sufficient facts to entitle them to an estoppel.

In this connection the briefs are silent on the question as to whether the defenses to the counterclaim would be equally burdened by the failure of the Holcombs to raise the points in their administrative claim for refund before the Commissioner. The District Court thought that it might be so burdened, and though he was furnished no authority, he concluded "to persist and grant the defendant's (government) motion for summary judgment." As we have said, neither party has raised or briefed this point and we, therefore, do not pass upon it. If the government decides to insist upon it on remand, the parties will have an opportunity to brief and argue the same and the District Court can initially decide the question.[1]

In light of these considerations we do not believe that summary judgment was appropriate in this case. As the Supreme Court held in *Poller v. Columbia Broadcasting Company,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962), the summary judgment "rule authorizes summary judgment 'only where the moving party is enti-

---

1. The government was questioned by the District Judge with regard to the proposition that the Holcombs' defense to the government counterclaim would be equally burdened with their failure to raise the statute of limitation ground administratively. Counsel stated that this was the government's position and that counsel be-

lieved the *Danielson* case was controlling but could not recall its citation. We put the name of this case through the entire federal tax library of the Lexis computer system and it came up with only four cases none of which had any bearing whatever here. Our own search of the point was likewise fruitless.

tled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, [64 S.Ct. 724, 728, 88 L.Ed. 967] (1944)." From this record we cannot tell "what the truth is." We, therefore, reverse the judgment and remand the case for trial in the light of this opinion.

It is so ordered.