John G. HOLCOMB and Ruth E. Holcomb, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 78–1748, 78–1754.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1979.

Decided April 25, 1980.

Rehearing Denied May 13, 1980.

William F. Kolbe, Racine, Wis., for plaintiffs-appellants.

Karl P. Fryzel, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and LEIGHTON, District Judge.*

FAIRCHILD, Chief Judge.

This case involves a 100% penalty assessment levied against John and Ruth Holcomb (Taxpayers) under § 6672 of the Internal Revenue Code of 1954 for failure to pay withholding taxes due from the corporation of which they were officers.

This is the second time this case has been before this court. In the first appeal, reported at 543 F.2d 1185 (7th Cir. 1976), we reversed the summary judgment granted to the government for the unpaid balance owing on this assessment and remanded the case for trial. Although the subsequent trial resulted in a jury verdict in favor of Taxpayers, the district court granted judgment notwithstanding the verdict against Mr. Holcomb on part of the government's claim. The district court also denied Taxpayers' request for attorney's fees pursuant to 42 U.S.C. § 1988. The present appeals challenge each of these rulings.[1] We affirm.

John G. Holcomb and his wife, Ruth E. Holcomb, were president and vice-president, respectively, of Lakeshore Transit-Kenosha, Inc. (Lakeshore). After encountering financial difficulties, Lakeshore failed to pay employment taxes due for the last two quarters of 1968 and the first quarter of 1969. Lakeshore filed a petition in bankruptcy in February of 1969.

In May of 1972, the IRS made a 100% penalty assessment in the amount of $40,019.51 against the Holcombs as responsible persons under § 6672 of the Internal Revenue Code.[2] Under that section, responsible persons are liable for wilfully failing to pay over withheld income taxes and the employee share of FICA taxes. Such taxes, for which officers of a corporation can be held personally liable, are known as "trust fund" taxes.[3] Two years later, on May 23, 1974, the IRS received $29,682.89 pursuant to its claim against Lakeshore in the bankruptcy proceedings. The government first applied $12,222.23 against the non-trust fund portion of Lakeshore's tax liability and then

---

* District Judge George N. Leighton of the United States District Court for the Northern District of Illinois sitting by designation.

1. Only John Holcomb appeals from the judgment on the merits as Ruth Holcomb was relieved of any liability. Both Taxpayers appeal the denial of attorney's fees.

2. Section 6672 provides:
   "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid for. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. (26 U.S.C. Sec. 6672).

3. Non "trust-fund" taxes would include corporate income taxes and the employer's share of FICA taxes.

allocated the remaining funds to the trust fund portion.

The penalty assessments and amounts allocated from the bankruptcy proceeds to trust fund taxes were as follows:

| Quarterly Period | May 1972 Penalty Assessments | Bankruptcy Proceeds | Balance Remaining Due |
|---|---|---|---|
| 9/30/68 | $11,923.64 | $11,923.64 | -0- |
| 12/31/68 | 18,307.43 | 5,536.92 | $12,770.51 |
| 3/21/69 | 9,788.44 | -0- | 9,788.44 |

Prior to the disbursement of the bankruptcy proceeds the Holcombs had paid the sum of $2,700 on the penalty assessment. The amount owing was also reduced by the amount of $1,238.22 which the IRS withheld from the Holcombs' personal income tax refunds for 1972 and 1973.

This litigation began when Taxpayers filed an action in district court after their claim for refund of the amounts paid by and withheld from them was denied by the IRS. The government counter-claimed for the unpaid balance of the penalty assessment. The district court granted the government's motion for summary judgment on its counter-claim. The first appeal followed.

In reversing, this court remanded the case for trial on the following issues: (1) whether Mrs. Holcomb was a responsible person under § 6672; (2) whether waivers signed by the Taxpayers in September, 1971 extending the statute of limitations with respect to the third and fourth quarters of 1968 were effective; (3) whether the government and the Holcombs had entered into an agreement that the bankruptcy proceeds would be first allocated to trust fund portions of corporate liability; and (4) whether Taxpayers were estopped from raising issues 2 and 3 with respect to their refund claim or in defense of the government's counter-claim because of failure to allege those grounds in the administrative claim for refund.

At trial, the district court held that Taxpayers were estopped from asserting the waiver or agreement issues on their suit for refund but permitted them to be raised in defense of the government's counter-claim. The jury found against the government on each of the other three issues. Accordingly, because Ruth Holcomb was found not to be a person responsible for payment, she was granted judgment for one-half the amounts paid by and withheld from Taxpayers. Because the jury found that the Taxpayers were intentionally misled in signing the waivers, the government was not permitted to recover from John Holcomb with respect to the last two quarters of 1968, those claims having been barred by the statute of limitations. On the third issue, the jury found that IRS agreed that any funds collected from the bankruptcy of Lakeshore "would first be applied so as to reduce [Taxpayers'] personal liability." The district court, however, held that the agreement was not supported by consideration[4] and granted judgment against John Holcomb in the amount of $7,819.33 (1st Quarter, 1969 liability of $9,788.44 less Mr. Holcomb's share of the amount paid by Taxpayers on the penalty assessment).

## THE AGREEMENT BETWEEN THE PARTIES

An understanding of this issue requires a statement of the facts. In light of the jury's finding, we must take the facts in the light most favorable to Mr. Holcomb.

On March 23, 1972, Taxpayers and their attorney, Mr. Bieberstein, met with IRS agents to discuss collection of the personal liability of Taxpayers with respect to trust funds due from Lakeshore. At this point, Lakeshore was in bankruptcy and Attorney Bieberstein sought to persuade the IRS to await distribution of the bankruptcy proceeds before taking any action to recover from the Holcombs personally. No assessment had been made against the Holcombs. Following this meeting, a "District Conference Report on Proposed 100-percent penalty assessment" was prepared by IRS, and a copy sent to each Taxpayer. It is a printed form, and under "Principal Issue" the word

---

**4.** The bankruptcy proceeds exceeded the trust fund taxes pertaining to the 1st Quarter of 1969, the only quarter for which John Holcomb was personally liable.

"None" was entered. Under "Remarks," "There were no relevant issues raised as to responsibility. Discussion centered around ability to pay. Taxpayers were told that if any dividends are received from the bankruptcy proceedings, appropriate adjustments would be made." Both Holcomb and Bieberstein testified at trial that they understood this statement to mean bankruptcy proceeds would be applied to trust fund liability, rather than to the corporation's non-trust fund tax liability. Bieberstein testified that threats had been made to seize Taxpayers' personal assets. He told the agents about the bankruptcy proceeding and that there were substantial assets, enough to pay the claim in his view. The agents said something about the Holcombs making payments in the interim while waiting for the bankruptcy distribution. Although Mr. Bieberstein knew in a general way that there were other corporate tax liabilities for which the Holcombs were not personally responsible, such liabilities were not mentioned at the conference. On May 22, 1972, the 100% penalties for the three quarters were assessed against the Holcombs.

Mr. Bieberstein thought he had persuaded the agents to forget about interim payments while waiting on the bankruptcy, but later on the agents said that Holcombs ought to be making payments. October 25, 1972, Mr. Bieberstein conferred with the agents and after discussion of lower and higher figures, the agents consented to $300 per month.

Taxpayers and a revenue officer signed a payment schedule containing the following agreement:

"A payment of $300.00 to be submitted by November 3, 1972 and payments of $300.00 to be submitted on the third of each month thereafter. This agreement to be in effect for six months or upon receipt of proceeds from Bankruptcy-Case No. 69–B–480—whichever is sooner.

"Failure to keep the above listed agreement will result in Notice of Levy on all sources of income and seizure of real and personal assets without further notification."

The court instructed the jury that it could find a binding agreement between the parties only if it determined that the Taxpayers agreed to make the monthly payments in consideration of the government's promise to apply the bankruptcy proceeds so as to reduce Taxpayers' personal liability. The jury answered that the IRS so agreed. On motions after verdict, the government contended (1) that there was no evidence to support a finding that the government agreed to the allocation claimed, and (2) that as a matter of law there was no consideration to render the agreement enforceable, if made. The district court did not rule on contention (1), but held that there was no consideration sufficient to support such an agreement.

John Holcomb contends that the district court erred in so holding, and relies on our decision in the first appeal. He argues that this court's opinion held that if the making of the alleged agreement could be established as a matter of fact, the government would be bound. Therefore the district court's ruling after verdict was in derogation of the "law of the case." After review of the issues presented to this court on the first appeal and the decision rendered therein, we do not agree.

■ While an appellate decision establishes the "law of the case" for all subsequent stages of the litigation (See 5 Am. Jur.2d, 188, Appeal and Error, § 744), the trial court is restrained only with respect to those issues which have been considered and resolved by the appellate court.

■ Examination of the proceedings in the district court and the briefs filed in the first appeal demonstrates that the question of whether there was legally sufficient consideration was not presented to this court. In granting summary judgment to the government originally, the judge apparently assumed that the Taxpayers were foreclosed from relying on the alleged agreement because this issue had not been raised in the claim for refund filed with the Commissioner.

On appeal the government argued only that the government is under no duty to allocate bankruptcy proceeds so as to reduce penalty assessments and any agreement by a revenue officer to do so would be outside the scope of the officer's authority and therefore not binding on the government.

In our decision we stated as follows:

"The Holcombs at the time of trial advised the District Court through their counsel 'on the allocation of the bankruptcy proceeds we should be able to show in defense of the counterclaim that the government received the money in the bankruptcy proceeding which it had agreed to apply against these personal liabilities, and it failed to do so: *that there was consideration for that agreement* and the government should be held to it.' We agree that it was error to grant the government's motion for summary judgment on this point, in view of this claim." 543 F.2d, at 1187 (emphasis supplied).

In holding that the Taxpayers had a right to attempt to prove a binding agreement we did not relieve them of the burden of proving adequate consideration. Our reference to the existence of consideration was part of the description of the Taxpayers' claim, not an assertion that under some particular set of facts consideration would be present. Therefore, the district court was not precluded from dealing with this question.

■ We agree with the reasoning of the district court that the Taxpayers' promise to make monthly payments was not sufficient consideration to create a contract out of the government's promise to apply the bankruptcy proceeds in the manner claimed, even if the "appropriate adjustments" representation be interpreted as the Taxpayers contend. At the time of the October agreement, there had been an assessment. IRS could have summarily seized Taxpayers' assets. Taxpayers agreed only to make a series of payments, and gave up nothing else, such as their right to seek a refund and contest ultimate liability. Indeed when the jury verdict determined that Mrs. Holcomb was not liable, she recovered one-half of the payments made and withheld. The purpose of the agreement to make payments seems clear enough—to induce IRS to delay seizure of personal assets until the amount recoverable from the corporate bankruptcy had been determined.

■ The general rule is that a promise to do something which the promisor is already legally obligated to do does not constitute consideration. 17 Am.Jur.2d Contracts, § 119, Restatement, Contracts § 76.

The district court also noted that Mr. Holcomb had become obligated to cause payment to be made when the corporation withheld the taxes, and reasoned that a promise in March, before the assessment, would have been only a promise to do what the law required. There seems to have been little question even in March but that Mr. Holcomb was responsible for payment, but be that as it may, we see no sufficient evidence of a promise to pay until October, after the assessment.

The government additionally contended before the district court and on this appeal that there was no evidence to support the jury's finding that IRS promised to allocate the corporate bankruptcy proceeds so as to reduce Taxpayers' personal liability. That question turns on the proper interpretation, under the circumstances, of the term "appropriate adjustments." The government contends that it was "appropriate," and would be its ordinary policy, to apply the proceeds of the corporate bankruptcy to the tax liabilities of the corporation for which Taxpayers were not personally liable before applying them to the corporate trust fund liabilities for which one or both Taxpayers were personally liable. The district court did not reach this contention because it decided in favor of the government on the issue of lack of consideration to render the promise enforceable, if made.

Mr. Holcomb's argument is that the March "conference report dealt only with the proposed 100% penalty assessments against the Holcombs personally and the 'appropriate adjustments' to which it refers

were obviously adjustments which would reduce those personal assessments."

It must be noted, however, that the bankruptcy dividend would be proceeds from the corporate assets. Even though the conference dealt only with the collection of the personal liabilities and the Taxpayers urged the IRS to delay collection until the bankruptcy proceeds were received, we conclude that the use of the vague term "appropriate adjustments" could not reasonably be found to limit the government in the manner claimed.

■ Absent an enforceable agreement, the government was under no obligation to apply the bankruptcy proceeds so as to reduce Taxpayers trust fund liability. *Monday v. United States*, 421 F.2d 1210 (7th Cir. 1970), *cert. denied* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Therefore the district court was correct in granting the government judgment *n. o. v.* on its counterclaim, as to the First Quarter of 1969.

ATTORNEY'S FEES

■ Taxpayers also appeal from the Order of the district court denying their request for attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976. It provides, in pertinent part, that " . . . in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Taxpayers established, for the purpose of the counter-claim, that the waivers were invalid and thus defeated liability as to two quarters. Mr. Holcomb clearly prevailed to that extent on the counter-claim. Mrs. Holcomb also established that she was not liable because she was not responsible for payment. She thus prevailed on both her action for refund and the counter-claim. The district court found Taxpayers to be the prevailing parties and assumed § 1988 was applicable to the counter-claim, but denied Taxpayers' attorney's

fees on the basis that there was no showing that the government had acted in bad faith.

The first question to be resolved in this matter is whether § 1988 is applicable to the counter-claim. That section, literally applies to actions by or on behalf of the government, and the courts, in general, have held the statute not applicable to suits instituted by taxpayers to obtain refunds. *Aparacor, Inc. v. United States*, 571 F.2d 552, 215 Ct.Cl. 596 (1978) (*en banc*); *Key Buick Co. v. Commissioner*, 68 T.C. 178 (1977), appeal pending (C.A.5, No. 77–2781). *Contra, Levno v. United States*, 440 F.Supp. 8 (D.C.Mont.1977); *St. James Sugar Cooperative, Inc. v. United States*, 79–2 U.S.T.C. par. 9476 (E.D.La., June 12, 1979).

But where, as here, the government has responded with a counter-claim, there has been held to be an action "by or on behalf of the United States," and § 1988 is applicable. *Patzkowski v. United States*, 576 F.2d 134 (8th Cir. 1978); *Bryant v. United States*, 456 F.Supp. 174 (E.D.Pa.1978). *Contra, Duff v. United States*, No. H–77–289 (S.D.Tex., Dec. 18, 1978); *Lieb v. United States*, Stand.Fed.Tax.Rep. (CCH) par. 9752 (E.D.Okl., Sept. 29, 1977) (attorney's fees also denied on other grounds). *See also, Star Oil Co. v. United States*, 41 A.F.T. R.2d, par. 78–388 (W.D.Okl., Dec. 16, 1977) (attorney's fees denied on other grounds).

Although § 1988, by its terms, leaves the decision to award attorney's fees to the discretion of the trial court, the courts have held that attorney's fees are appropriate only where the government's action was instituted in bad faith or was frivolous, harassing, or vexatious. *See Bryant v. United States*, 456 F.Supp. 174; *Patzkowski v. United States*, 576 F.2d 134 (8th Cir. 1978); *Lieb v. United States*, CCH par. 9752 (E.D.Okl., Sept. 29, 1977); *St. James Sugar Cooperative, Inc. v. United States*, 79–2 U.S.T.C. par. 9476 (E.D.La., June 12, 1979); *In re Slodov*, 419 F.Supp. 64. *But see Levno v. United States, supra* (attorney's fees awarded without discussion of bad faith).

In *Patzkowski*, the district court found no bad faith on the part of the government

and denied the taxpayer's request for attorney's fees. The Eighth Circuit remanded for reconsideration after holding that subjective bad faith was only one of the several criteria to be considered by a district court in exercising its discretion under § 1988. *Id.* at 139. In the case at bar, the district court noted that attorney's fees are authorized where the action brought by the United States was frivolous, harassing, or in bad faith. The context of the court's reference to failure to show bad faith makes it clear that in exercising its discretion, the court applied the proper criteria.

Taxpayers ask us to hold that harassment, bad faith, and vexatious conduct on the part of the government have been established by the jury verdict in their favor with respect to the waiver issue. On that issue, Taxpayers testified that they were induced to sign waivers extending the statute of limitations by a revenue agent who told them that by signing on the bottom line of the form they would be signing only on behalf of the corporation. Subsequently, the revenue agent drew an arrow from each signature to the line provided on the form for individual taxpayers. At trial the jury responded affirmatively to the following question. "Have the plaintiffs, John and Ruth Holcomb, proven by a preponderance of the evidence, that they were intentionally misled by the Internal Revenue Service in signing waivers?" Thus the jury believed the Taxpayers' version of the events surrounding the signing of these waivers and disbelieved the testimony of the IRS agent involved.

The verdict thus found intentional wrongdoing on the part of the agent, but it did not establish, nor was there any showing, that the government officers responsible for the decision to file the counter-claim knew or should have known that the waivers relied on were fraudulently obtained.

Taxpayers cite *In re Slodov,* 79–1 U.S. T.C. par. 9215 (1979), to support their claim. In that case, the bankruptcy judge awarded attorney's fees incurred by a bankrupt in defending against a § 6672 penalty assessment after finding that the IRS failed to allocate payments made by Taxpayer according to an agreement between the parties. That case differs from the one at bar in several important respects. First, the IRS ignored a provision of the IRS Manual requiring IRS to honor designations accompanying voluntary payments. More importantly, the government withheld the existence of this provision from the trial judge and argued "steadfastly through the bankruptcy court, district court and in briefs to the Sixth Circuit that the IRS could and, as a matter of standard procedure would, ignore any designation to trust fund liability" before withdrawing this argument. *Id.* at p. 86,406.

The court in *Slodov* awarded attorney's fees only after finding that the government's claim was "utterly groundless and without foundation in fact." *Id.* at p. 86,-410. Although Taxpayers here ultimately prevailed on the waiver issue, it must be noted that in the first proceeding in district court, summary judgment was granted to the government on this issue after the district court found the changes on the waiver forms "hypertechnical and immaterial."

We conclude that, assuming that § 1988 applies to the counter-claim, the district court did not abuse its discretion in denying the Taxpayers' request for attorney's fees.

■ In a footnote to its brief the government requests us, in the event of affirmance, to "remand" the case to the district court for the purpose of renewing a government motion under rule 60 to correct the judgment. Its motion made earlier was denied because the record had already been docketed here on appeal.

Apparently the government contends that because John Holcomb was not permitted to challenge the waivers on his refund claim, and did not recover his one-half of the payments made and withheld in his action for refund, it was error to offset his one-half of the payments against his liability for the First Quarter of 1969, recovered by the government on its counter-claim.

Under the circumstances the proper application of John Holcomb's payments was

open to question. The government's contention may have been arguable. But it was a question requiring judicial decision on the basis of the record. If the district court erred in allowing the full offset, such error was by no means a clerical, mathematical, or other clearly demonstrable mistake, oversight, or omission, subject to correction under Rule 60(a), F.R.Civ.P.

The government's contention could have been raised on appeal, or, preferably in the first instance, by a timely motion to alter or amend the judgment under Rule 59(e). The government neither appealed nor made such timely motion.

There is no occasion for a remand. Treating the request as one for leave to seek modification by further motion in the district court and in the interest of finality, we decline.

The judgment appealed from is AFFIRMED.