EXXON CORPORATION,
Plaintiff–Appellee,

v.

The UNITED STATES,
Defendant–Appellant.

No. 87–1516.

United States Court of Appeals,
Federal Circuit.

March 8, 1988.

Robert L. Moore, II, Miller & Chevalier, Chartered, Washington, D.C., argued for plaintiff-appellee. With him on the brief, were John B. MaGee, Thomas D. Johnston and J. Bradford Anwyll, of counsel. Also on the brief, was Jennings T. Smith, New York City, of counsel.

Mildred L. Seidman, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With her on the brief, were William S. Rose, Jr., Acting Asst. Atty. Gen., Michael L. Paup and Jonathan S. Cohen, Washington, D.C.

Before MARKEY, Chief Judge, and DAVIS and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

The United States appeals the judgment of the United States Claims Court, *Exxon Corp. v. United States*, 12 Cl.Ct. 434 (1987), awarding Exxon a tax refund of $25.3 million plus interest. We vacate and remand.

BACKGROUND

This is the second time this case comes before us. Because the underlying facts have been extensively discussed elsewhere, *see Exxon Corp. v. United States*, 785 F.2d 277 (Fed.Cir.1986); *Exxon*, 12 Cl.Ct. 434; *Exxon Corp. v. United States*, 7 Cl.Ct. 347 (1985), we will here only briefly mention those facts necessary for the disposition of the case.

In 1960, Cuba seized the assets of a Panamanian corporation headquartered in Cuba named Esso Standard Oil S.A. (Essosa). Essosa was a subsidiary of Exxon Corporation, then known as Standard Oil of New Jersey (Standard). The controversy in this case centers around the tax implications for Standard of the Cuban seizure of Essosa's assets.

In an attempt to prevent Cuban expropriation, Essosa conducted a tax-free reorganization under I.R.C. § 368(a)(1)(D), on June 30, 1960. Under this reorganization, Essosa (1) created Esso Standard Oil S.A., Ltd. (Essosa Ltd.), headquartered in Florida, (2) transferred all of Essosa's non-Cuban assets to Essosa Ltd. in exchange for Essosa Ltd.'s newly created stock, and then (3) transferred all of Essosa Ltd.'s stock to Standard. Notwithstanding this reorganization, Cuba intervened against all of Essosa's remaining assets on July 1, 1960, and officially seized them on August 6, 1960. As of these dates, Essosa owed $9 million to Standard on a loan, and $27.4 million to Esso Export Corporation (Export), another Standard subsidiary, for crude oil received.

In a 1960 consolidated tax return with Export, Standard claimed bad debt deductions for the $9 million and $27.4 million losses, and a worthless stock deduction of $2.1 million for Standard's basis in Essosa's stock. The Internal Revenue Service (IRS) denied the $27.4 million deduction,

but initially permitted the others. Thereafter, Standard paid its taxes under protest, and filed a refund suit. In that suit, however, the IRS asserted that it had erroneously granted the other deductions, and challenged them by way of offset.

In an opinion dealing only with the $27.4 million loss, the Claims Court denied the deduction. *Exxon*, 7 Cl.Ct. 347 (1985). On appeal, we held that the $27.4 million loss was a valid uncollectible debt that could be properly deducted. *Exxon*, 785 F.2d at 281. Therefore, we reversed and remanded. *Id.* On remand, the Claims Court ruled that the law of the case doctrine compelled it to allow the $9 million bad debt and the $2.1 million worthless stock deductions. Subsequently, the government appealed.

## ISSUES

1. Whether the Claims Court erred in holding that the law of the case doctrine compelled it to allow the $9 million bad debt deduction.

2. Whether the Claims Court erred in holding that the law of the case doctrine compelled it to allow the $2.1 million worthless stock deduction.

## OPINION

### I

Our earlier opinion expressly dealt with whether Export's potential fraudulent conveyance claim against Standard precluded allowance of the $27.4 million bad debt deduction. *Exxon*, 785 F.2d at 279. In the previous appeal the government had conceded that the $27.4 million debt was valid and uncollectible, but argued that the debt was not worthless because Export had a fraudulent conveyance claim against Standard. *Id.* We held that Export could have no fraudulent conveyance claim against Standard because these two corporations are treated as one entity for tax purposes. *Id.* at 280. Consequently, we held that the debt was worthless. *Id.* at 281. On this basis, we concluded that Standard was entitled to the $27.4 million deduction. *Id.*

That is all we held. We did not address when Essosa became insolvent, nor whether Essosa's transfer to Standard of Essosa Ltd.'s stock amounted to payment of the $9 million loan. Our prior decision, therefore, does not compel the Claims Court's application of the law of the case doctrine. The Claims Court erred by holding it did. *Exxon*, 12 Cl.Ct. at 438–40.

### II

We agree with the government that a dispute exists concerning the value of the stock for which Standard claims a $2.1 million worthless stock deduction. The first Claims Court decision never addressed this issue, *Exxon*, 7 Cl.Ct. 347 (1985), and the decision we are now reviewing did not permit the issue to go to trial because the court disposed of the question under the law of the case doctrine. However, it is clear that our earlier opinion never reached the question of the proper valuation for the worthless stock.

## CONCLUSION

We vacate the Claims Court's judgment and remand for further proceedings.

**VACATED AND REMANDED.**