Erwin G. BAUMER and Clara S. Baumer, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Erwin H. BAUMER and Gail A. Baumer, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

SEVEN EIGHTY–EIGHT GREENWOOD AVENUE CORPORATION, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 81–7530.

United States Court of Appeals, Eleventh Circuit.

Sept. 17, 1982.

John F. Murray, Michael L. Paup, Gary R. Allen, Jo-Ann Horn, Glenn L. Archer, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Alex P. Gaines, Robert H. Hishon, Atlanta, Ga., for plaintiffs-appellees.

Before FAY and KRAVITCH, Circuit Judges, and YOUNG\*, District Judge.

FAY, Circuit Judge:

In this appeal we are asked to determine whether the doctrine of law of the case precludes the District Court from ascertaining the value of an option on the date it was granted. We hold that it does. The District Court's order is reversed and remanded with directions to ascertain the value in accordance with the prior panel's ruling.

## I. Background

On January 30, 1966, the Seven Eighty-Eight Greenwood Avenue Corporation (Corporation) contracted to purchase a parcel of residential property for $175,000. Erwin G. Baumer (Father) was the sole shareholder of Corporation. When Erwin H. Baumer (Son) learned of this transaction, he asked for an interest in the property and, in May, 1966, was given an option to purchase a one-half interest in the property. The term during which the option was exercisable was one year from its effective date and the exercise price was $88,000 plus five and one-half percent interest calculated from the effective date. In August, 1966, Corporation entered into a contract for the purchase of an adjacent piece of property for $25,000. Son was granted an amended option in January, 1967, which encompassed both properties. The exercise price for the new option was $100,000. The stated consideration for both options was $10, which Son did not recall having paid. Also in January, 1967, Corporation granted Pope & Carter Company, Inc. an option to purchase the properties for $500,000. In early December, 1968, Son exercised his option, giving a note to Corporation for $114,501.23, the entire option price.[1] On December 27, 1968, Pope & Carter exercised its option. The sale by Son and Corporation to an assignee of Pope & Carter was closed on July 1, 1969. Son received $252,700 for his one-half interest in the properties.

The Commissioner determined that upon Son's exercise of his option in 1968, Father received a constructive dividend taxable to Father based on the difference between the exercise price of the option and the fair

---

\* Honorable George C. Young, U. S. District Judge for the Middle District of Florida, sitting by designation.

1. The note included accrued interest.

market value of the property.[2] The taxpayers paid the deficiency and sued in District Court for a refund.

The District Court determined that the option and its amendment were distributions of corporate property resulting in a constructive dividend to Father. The court assumed, without deciding, that the constructive dividend occurred when Son was granted the option in 1966 and at the time of its amendment in 1967, years not in issue in the proceedings. The District Court, however, found that the option had no ascertainable value at the time of its grant or its amendment, " 'first because of the ad hoc nature of such a real estate option; second, the indeterminate length of time it is to be in effect; and third . . . because of questionable value to, and enforceability in the hands of, any third party.' " *Baumer v. United States*, 580 F.2d 863, 884 n.33 (5th Cir. 1978) (quoting District Court order). Therefore, under the open transaction doctrine of *Burnet v. Logan*, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931), the District Court ruled that tax liability attached at the time the option was exercised in 1968.[3] The court's valuation of the option was based on the consideration paid by Pope & Carter for its option.

A panel of the former Fifth Circuit affirmed both the finding of a constructive dividend and the determination that, under the open transaction doctrine, tax liability occurred in 1968. The affirmance of the applicability of the open transaction doctrine was on different grounds than those of the District Court. The panel ruled that the taxpayers had not satisfied their burden of establishing the value of the option in 1966 and 1967. Since the taxpayers had not produced any evidence of the value of the option at the time of its grant, the fair

market value of the option was unascertainable. Application of the open transaction doctrine was therefore required. Finally, the panel determined that the District Court erred in valuing the option with reference to the Pope & Carter option, holding instead that the option should be valued by the difference between the exercise price and the fair market value of the underlying property on the date the option was exercised. The case was remanded in order for the District Court "to determine the precise value of a one-half interest in the properties on December 6 [the exercise date] and the resulting value of the option upon its exercise." 580 F.2d at 886.

On remand, the District Court, 518 F.Supp. 813, overruled a government objection and permitted the taxpayers to introduce expert testimony regarding the value of the option at the time it was granted. Based on that evidence, the District Court concluded that the option did have an ascertainable value when granted, that the open transaction doctrine was inapplicable, and that tax liability attached in 1966 and 1967, not in 1968. The government appeals from this ruling.

## II. Law of the Case

 Under principles of law of the case,

a decision of a legal issue or issues by an appellate court . . . must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, *unless* [1] the evidence on a subsequent trial was substantially different, [2] controlling authority has since made a contrary decision of the law applicable to such issues, or [3] the decision was clearly erroneous and would work a manifest injustice.

---

**2.** The Commissioner also determined that Son's gain on the sale of his one-half interest should be imputed to Corporation. The District Court ruled that, under the facts of the case, imputation of Son's gain to Corporation was not warranted. This holding was affirmed by the first appeal.

**3.** Ordinarily, when property is received in exchange for other property the fair market value

of the property can be ascertained at the time of the exchange and any gain can be taxed at that time. The open transaction doctrine comes into play when fair market value cannot be ascertained at the time of the exchange. In that event, courts treat the transaction as "open" until value can be determined. *Burnet*, 283 U.S. at 412–14, 51 S.Ct. at 552–53; *Baumer*, 580 F.2d at 884–85.

*White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967); *see also EEOC v. International Longshoremen's Association*, 623 F.2d 1054, 1058 (5th Cir. 1980), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981); *Schwartz v. NMS Industries, Inc.*, 575 F.2d 553, 554 (5th Cir. 1978). It is clear that the District Court's determination that the option had an ascertainable fair market value when granted is contrary to the law of the case established by a prior panel of this Court.[4] However, the taxpayers argue that the District Court's deviation is justified under the first and second exceptions of *White v. Murtha*, because the evidence produced at the subsequent hearing was substantially different and because Revenue Ruling 80–186, 1980–2 C.B. 280, published after the remand of this case, is intervening contrary authority. Neither argument is persuasive.

Revenue Ruling 80–186 states that a transfer to a related party of an option to purchase real property is subject to gift tax on the date the option is transferred, not the date it is exercised. The first panel in this case assumed, without deciding, that the constructive dividend occurred on the date the option was granted. 580 F.2d at 884. The court then ruled that because of a lack of evidence in the record to establish value at the time of the grant, valuation must be deferred, under the open transaction doctrine, until the date of the option's exercise. That holding is not inconsistent with Revenue Ruling 80–186.

The taxpayers' claim that "new" evidence mandates affirmance of the proceedings on remand is not substantiated by the record in this case. The record reveals that the taxpayers made a deliberate tactical decision in the first trial not to introduce evidence going to the value of the option. Prior to trial the parties filed a Consolidated Proposed Pre-Trial Order which delineated the issues to be litigated. The taxpayers adopted a two-pronged strategy to defeat taxation of the option. First, the taxpayers maintained that the option was not a constructive dividend. Second, they main-

tained that if any dividend occurred, it occurred when the option was granted in 1966 or 1967, years barred by the statute of limitations. In conjunction with the latter claim, the taxpayers acknowledged the government's argument that the option should be valued and taxed in the year it was exercised because it lacked a readily ascertainable fair market value when granted. The taxpayers were clearly on notice that the government claimed liability attached under the open transaction doctrine, yet the taxpayers produced no evidence of the value of the option when granted. Instead, they argued that the open transaction doctrine was inapplicable as a matter of law. Based on the total absence of evidence in the record, the earlier panel ruled that the "taxpayers failed to satisfy their burden of demonstrating an ascertainable fair market value for the option at the time it was issued." 580 F.2d at 886.

There is nothing in the record to indicate that the evidence produced at the hearing after remand was unavailable to the taxpayers during the first trial. The taxpayers simply chose not to produce that evidence. They chose their trial strategy, litigated accordingly, and lost. They are not now entitled to resurrect a previously abandoned issue. A panel of this Court remanded for resolution of a narrow factual issue, the fair market value of the option when exercised. The District Court's only function on remand was to value the option "by subtracting the exercise price of approximately $100,000 from the fair market value of the underlying property when the option was exercised on December 6, 1968." 580 F.2d at 886. Permitting evidence of the value of the option when granted was outside the scope of that mandate and impermissible.

It appears from the record that at the hearing after remand the government produced evidence that the fair market value of the underlying property when the option was exercised was $493,250. The taxpayers produced no countervailing evidence and do not contest the government's valuation.

4. *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

We therefore direct the District Court on remand to find that the value of the underlying property at the time of exercise was $493,250. The District Court is further directed to value the constructive dividend in accordance with the instructions set forth by the prior panel of this Court.

REVERSED and REMANDED.