Bernard LITMAN, Plaintiff-Appellant,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 85–5939.

United States Court of Appeals, Eleventh Circuit.

June 17, 1986.

Joel D. Eaton, Miami, Fla., for plaintiff-appellant.

Gerry S. Gibson, Steel Hector & Davis, Miami, Fla., for defendant-appellee.

Before FAY, Circuit Judge, HENDERSON * and NICHOLS,** Senior Circuit Judges.

NICHOLS, Senior Circuit Judge:

This suit, for breach of a general agency agreement and for slander, resulted in a jury verdict for Litman, and a panel of this court decided the appeal of Massachusetts Mutual Life Insurance Company (Mass. Mutual) for the most part favorably to Litman, but remanded for a new trial the issue of punitive damages. *Litman v. Massachusetts Mutual*, 739 F.2d 1549 (11th Cir.1984). There had been no cross-appeal. In the court below, Mass. Mutual stipulated it waived the new trial but accepted and would pay the full amount of punitive damages the jury had awarded, $250,000, whereupon the district court entered judgment for that amount. Litman, who did

---

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

not join in the stipulation, now appeals, alleging the mandate of this court entitled him to a new trial on punitive damages unlimited by the $250,000 or any other ceiling on the amount the jury might award. We affirm.

### Facts

The panel opinion cited, *supra*, shows that Litman, a former salesman of Mass. Mutual, rose to become its general agent in Miami, but a falling out occurred by reason of dissatisfaction on the part of Mass. Mutual with aspects of the way Litman ran his business. It terminated his general agency in 1977. Following this, other representatives of Mass. Mutual made to Litman's former employees, and to a prospective new employer, unfavorable comments about his abilities as a businessman, and whether he paid his business debts. Litman sued in the Florida State court, in four counts, two alleging wrongful breach of contract, and two alleging slanders. Mass. Mutual removed the suit to the U.S. District Court where, after trial a jury awarded $2,000,234 for breach by Mass. Mutual of a general agent's contract as orally modified, $100,000 for a slanderous statement to a prospective new employer, $150,000 for slanderous statements to Litman's own former employees, and $250,000 in punitive damages for the slanders, not allocated between the two slander counts. Mass. Mutual's appeal vigorously and nonfrivolously attacked every part of that verdict, but successfully only with respect to a relatively minor issue. The slanderous statement to a prospective employer the panel held privileged and not actionable as slander. It would have eliminated, besides the $100,000 awarded for that, also any portion of the punitive damages allocated to that count, but unfortunately these damages were not so allocated, and therefore the panel saw no alternative but to reverse the punitive award and it held "the issue remanded for a new trial." There is nothing in the panel opinion to indicate it perceived any "issue" or issues before it as to punitive damages except that they were improperly awarded or excessive because at-tributable in part to conduct held not tortious, and should be reduced or eliminated.

It was "uncontroverted," as the panel stated, that the breach of contract issues were to be decided under Massachusetts law, as stipulated in the general agency contract, but the measure of damages as to all claims, and the slander issues in all their aspects were to be determined under Florida law, which thus governs the punitive damages question in all its aspects. No punitive damages had been or could be awarded for the breach of contract.

Although on its face the order for a new trial as to punitive damages was a partial success for Mass. Mutual, and in a wholly rational world the punitive damages under one count might be expected to be less than those awarded previously under two, the operation of law does not always transpire according to logic. Both parties, by their acts and by their words, tell us that in their judgment a new jury trial on punitive damages, with the jury equally free to award more or less than $250,000, would probably, perhaps almost certainly, result in more rather than less. The expectations of plaintiff Litman, as stated by counsel to us on oral argument, fall little if at all short of gloating. Under the law of Florida, which governs here, the wealth or net worth of the tort defendant is a factor in assessing punitive damages, though not of course the only one. *St. Regis Paper Co. v. Watson*, 428 So.2d 243 (Fla.1983). In that case, however, a dissent argues it is the *only* factor controlling the amount of a punitive damages award. Counsel for Litman believes, rightly or wrongly, that the depth of Mass. Mutual's pockets is almost unfathomable.

> Massachusetts Mutual makes 250,000 dollars every six minutes or so. That's not in the record and I made it up. It's an exaggeration, but they make a lot of money.

Mass. Mutual is seen as placed on this earth by a beneficent providence to enrich the party who can claim a punitive damages award against it. It would be arguable to the jury that $250,000 was a mere

pin prick that would not have the educational effect on the tort feasor that punitive damages are supposed to have.

Defendant's stipulation to accept the award of $250,000 punitive damages against it is embodied in a document entitled a "waiver of right to a new trial" and "consent to the entry of judgment." It was intended to take effect unilaterally. Litman argued the mandate bound the court to conduct a trial, and another outcome would condone frivolous appeals, as a defendant could ask for a new trial and if it got one, accept or reject it as its advantage might appear. To avoid such frivolity, his argument runs, an appellant who seeks a new trial must take the bad with the good—accepting the new trial, however modified and circumscribed to its disadvantage the new trial may be as actually mandated.

The court in its order stated it was "under a strict obligation to follow the dictates of a mandate," which it must implement both in letter and spirit, citing *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir.1985). But it said, according to the same authority, a trial court is free to address, as a matter of first impression, those issues which the appellate court did not address.

The trial court held that the issue before it had not been addressed by the appellate court, having arisen subsequently. It was—

> may a defendant, whose right to a new trial has been recognized by the Court of Appeals, waive that right by offering to accept the original judgment, in the situation where the infirmity at the first trial necessarily inflated Plaintiff's recovery? [Footnote omitted.] This Court finds that the answer, on the facts of this case, is yes.

Accordingly, the court entered judgment for $250,000 with interest from the date of the original final judgment. The rest of it had already been paid.

## Discussion

Appellant's brief here relies on the point made in *Piambino v. Bailey, supra, i.e.,* that a trial court may not alter, amend, "or examine" a mandate received from an appellate court, but must enter an order in strict compliance with the mandate, implementing both its letter and spirit. We note *Piambino* also says the trial court must take into account the "circumstances it embraces," 757 F.2d at 1119, *i.e.,* interpret the mandate in light of its background of operating and procedural fact. All this is the "mandate rule," but it is, the *Piambino* panel says at 1120, nothing more than a specific application of the "law of the case doctrine." The exceptions to that doctrine applicable to the mandate rule, are instances of new evidence, an intervening change in controlling law, or a clearly erroneous decision working a "manifest injustice." Appellant adds a point derived from *Utah Public Service Commission v. El Paso Natural Gas Co.,* 395 U.S. 464, 89 S.Ct. 1860, 23 L.Ed.2d 474 (1969), *i.e.,* that (at least in some circumstances) a trial court cannot dispose of a case contrary to a mandate even if all parties stipulate and agree to do so. As Mass. Mutual stipulated here, but not Litman, this appears to appellant as an *a fortiori* case.

The least of the objections to this argument is that appellant did not clearly urge it below. That is, he relied on the mandate but did not spell out the obligations it imposes as he now does. He appears to have derived his awareness of *Piambino* from its citation in the trial court's order. It was then a very recent decision, so lack of previous awareness of it is understandable. It does not, however, add to or change prior case law, as copiously cited in the *Piambino* opinion. The argument based on it misses the point for the further reason that the district court, well aware of it, clearly had no intention of doing any of the things *Piambino* teaches he must not do. He thought he was interpreting the mandate, not altering, amending, or "examining," it. (We suppose "examining" really means re-examining in this context.) He might have been mistaken, but the suggestion by appellant that he rendered mere "lip service" to the *Piambino* rule is inap-

propriate and unhelpful to this court. We must and do suppose the district judge acted in entire good faith, and we do not agree he was even mistaken, though we would state the reasons for denying a new trial a bit differently than he did.

It hardly requires citation of authority that a mandate, like any other writing, will at times require interpretation. In *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940), the Court said:

> The Court of Appeals invoked against the Commission the familiar doctrine that a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid at rest [citing case]. That proposition is indisputable, but it does not tell us what issues were laid at rest [citing case]. Nor is a court's interpretation of its own mandate necessarily conclusive.

In *Mercer v. Theriot*, 316 F.2d 635, 638 (5th Cir.1963), *rev'd on other grounds*, 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964), the court holds that the correctness of a trial court's construction of a mandate is an appealable issue:

> Accordingly, it is unnecessary to consider the application of the "law of the case doctrine."

Giving the district court's order the sympathetic consideration it deserves, we note it undertakes to interpret what the previous panel of this court meant when it held that "the award of punitive damages must be reversed and the *issue* remanded for a new trial." (Emphasis supplied.)[1]

What issue? The district court, in effect, determined that two issues as to punitive damages were now before it, whether they should be reduced as excessive, as Mass. Mutual desired, and whether they should be increased as inadequate as Litman desired. The first of these issues, *i.e.*, reduc-

tion of the damages, was dealt with in the mandate and a new trial required, but by its stipulation Mass. Mutual eliminated any dispute of fact applicable to reduction of punitive damages, and the most zealous for the untouchability of mandates would not require a trial when the jury would have no issue of fact to decide. The second of these issues, *i.e.*, of increasing the damages, was new, was not before the appellate panel, and it would be unreasonable to suppose it remanded an issue that had not been before it.

The issue of increasing the punitive damages was not before the appellate panel because Litman had filed no cross-appeal, nor, actually, had he filed any motion for judgment n.o.v. or for a new trial. He told us quite plainly that this was not because he was satisfied with $250,000 of punitive damages, but because Florida law did not recognize that a tort plaintiff had an appealable issue in any insufficiency of punitive damages. The first panel has already determined that Florida law governs this case with exceptions not applicable to the tort counts. Thus, our attention is directed to Florida law as determining whether the panel had or could have had before it an issue as to increase of punitive damages over the $250,000 the jury awarded.

There was none according to a recent decision of the Florida Supreme Court, *St. Regis Paper Co. v. Watson*, 428 So.2d 243 (1983). This case holds, reversing a lower court, that a trial judge may properly order a new trial if he deems punitive damages are excessive, but not if they are inadequate, unless the jury was improperly influenced or some fraud contaminated the verdict.

The Florida court's explanation for this seeming anomaly is that "a plaintiff has no right to punitive damages." The jury awards them "on behalf of the public, not in the interests of the plaintiff." A *dissent* in that case would have inferred that the

---

1. The mandate (judgment) said the district court's judgment was reversed in part and the cause was hereby remanded to the district court for further proceedings "in accordance with the opinion of this Court." The language quoted in the text is part of the opinion, thus made a part of the mandate by reference.

jury erred from the disproportion of the punitive damages award, $5,585.25, to an estimated net worth of the defendant, St. Regis Paper Co., of a billion dollars. The *dissent* would have affirmed the grant of a new trial to enable the jury to award more adequate punitive damages, exactly the result sought by the appellant here.

In view of the absence of a cross-appeal and the view Florida law takes of punitive damages, the prior panel did not have any issue before it as to the punitive damages being insufficient. Litman attempted no showing as to the punitive damages verdict being the result of jury misconduct or contaminated by some kind of fraud. The "issue" remanded could not have meant this issue, which was not even before the panel and, on the other hand, the mandate could easily be read as referring to the issue of the punitive damages being excessive, an issue the panel discusses at length. We so construe the mandate and thus the trial judge did not err in his construction. Since the panel remanded only the issue of the award being excessive, it did not intend to require a new trial on terms exposing Mass. Mutual to more punitive damages than $250,000. While the matter is not one for application of "law of the case," it does appear that a holding by the first panel, such as Litman imputes to it, would be clearly erroneous and would work a manifest injustice, and therefore any such construction should be eschewed.

The same considerations obtain if we review the decision below, as we should, on the basis that the remand did not speak as to a new trial on punitive damages so far as the issue would be their increase. The district court made the only possible decision in view of the Florida law.

### Conclusion

The judgment appealed from is affirmed.

AFFIRMED.

FAY, Circuit Judge, dissenting:

As Oscar Wilde once noted: "In this world there are only two tragedies. One is not getting what one wants, and the other is getting it." [1] Massachusetts Mutual got what it wanted. It appealed the results of the first trial. Among other issues, it challenged the award of punitive damages. Finding problems with the particular award based upon alleged slanderous statements, we affirmed most of the results but vacated the award of $250,000 and remanded for a new trial. *Litman v. Massachusetts Life Insurance Co.*, 739 F.2d 1549 (11th Cir. 1984). Rather than face the obvious consequences of such a proceeding, Massachusetts Mutual now "waives" its right to a new trial and agrees to the reinstatement of the earlier verdict and judgment. The trial court allowed this tactic and the majority now adds its stamp of approval. I respectfully dissent.

Much can be said, and has been, about the parties' motives. Neither is before us on behalf of the integrity of the judicial system. Both are interested in one thing—money. This is not evil, merely the reality of this case.

Frankly, the result in this case is probably just. The first trial involved many hotly contested issues. All were resolved in a fair trial. The overall perspective and balance of such a proceeding is certainly better than a trial on only one issue—particularly one such as punitive damages after an affirmance of liability. But that is not the issue.

The only issue before us is whether a successful appellant can change its mind and by its unilateral action modify the mandate of this court. I would hold that it cannot. Litigants are always required to "weigh" the prospects of trials and appeals. The list of "what ifs" is endless. But the process does require some order. Courts do not operate at the whim of the parties. *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir.1985) may not be absolutely rigid but surely it stands for something.

---

1. *Lady Windermere's Fan*, Act III, (1892). This may be the source of the oft repeated caveat

given children by some parents, "Be careful what you pray for as you may get it!"

Massachusetts Mutual raised many issues on its appeal. It was partially successful. The concluding paragraph of our opinion reads:

We hold that the statement made by James Martin of Mass Mutual to Litman's prospective employer cannot as a matter of law be actionable as slander, we accordingly reverse the award of $100,000 based upon this statement. We likewise hold that the award of punitive damages must be reversed and the issue remanded for a new trial. As to all other claims, the judgment of the district court is affirmed.

*Litman,* 739 F.2d at 1562.

The mandate of this court ordered a new trial on the issue of punitive damages.

The law of our circuit concerning the obligations of a trial court to follow our mandates is clear and settled. In *Piambino,* Judge Tjoflat spelled it out in simple direct terms:

A trial court upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate. *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). The trial court must implement both the letter and the spirit of the mandate, *Nixon v. Richey,* 513 F.2d 430, 435–36 (D.C.1975), *aff'd on other grounds,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *Reserve Mining Co. v. Environmental Protection Agency,* 514 F.2d 492, 541 (8th Cir. 1975) (en banc), taking into account the appellate court's opinion, *In re Sanford Fork & Tool Co.,* 160 U.S. at 256, 16 S.Ct. at 293 (1895); *Cherokee Nation v. Oklahoma,* 461 F.2d 674, 678 (10th Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972), and the circumstances it embraces. *Sherwin v. Welch,* 319 F.2d 729, 731 (D.C.Cir.1963). Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal, *Holcomb v. United States,* 622 F.2d 937, 940

(7th Cir.1980); *see also, Dorsey v. Continental Casualty Co.,* 730 F.2d 675, 678, 679 (11th Cir.1984), it is bound to follow the appellate court's holdings, both expressed and implied. *Cherokee Nation,* 461 F.2d at 678; *see also,* 1B J. Moore, J. Lucas, & T. Currier *Moore's Federal Practice* ¶ 0.404[10] (2d ed. 1984). If the trial court fails fully to implement the mandate, the aggrieved party may apply to the appellate court for enforcement, by petitioning for a writ of mandamus.

The "mandate rule," as it is known, is nothing more than a specific application of the "law of the case" doctrine. *Greater Boston Television Corp. v. Federal Communications Commission,* 463 F.2d 268, 279 (D.C.Cir.1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972); *City of Cleveland v. Federal Power Commission,* 561 F.2d 344, 348 (D.C.Cir.1977). This doctrine stands for the proposition that an appellate decision on an issue must be followed in all subsequent trial court proceedings unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice. *Westbrook v. Zant,* 743 F.2d 764, 768–69 (11th Cir. 1984); *Baumer v. United States,* 685 F.2d 1318, 1320 (11th Cir.1982) (quoting *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967).

*Piambino,* 757 F.2d at 1119–20.

It is not even contended that any of the exceptions mentioned in *Piambino* exist here. To suggest that the trial court did not commit error because "he thought he was interpreting the mandate, not altering, amending, or 'examining,' it," *ante* at 857, begs the question. I'm certain the trial judge in *Piambino* "thought" he was interpreting the mandate and not altering or amending it.

Massachusetts Mutual did not withdraw its appeal. It filed no motions in this court to modify or amend the mandate based

upon its "waiver" of its new found right to a new trial.

The panel has no right to overrule *Piambino*, directly or indirectly. Our en banc court can take such action but only in accord with proper procedures.

Under the rule announced by the majority, a defendant in a personal injury action might successfully appeal an adverse verdict and yet, thereafter, decide to "waive" a retrial because the plaintiff had since died and the exposure had increased. The reversal might have been based upon "inflated" damages for lost earnings, etc. Retrials are always risky. Life in not static. One party or the other will most often profit.

This "new rule" may shorten some proceedings in the trial courts (although I doubt it) but it will surely multiply appeals geometrically. It will also lead to much uncertainty as litigants suggest their versions of how to interpret a mandate. The "mandate rule" as discussed in *Piambino* is designed to eliminate uncertainty and game playing.

I would require the trial court to proceed with the retrial of punitive damages as ordered.