**FIRST FAMILY FINANCIAL SERVICES, INC.**
**Plaintiff**

v.

**Rainard SANFORD Defendant**

**No. CIV.A. 101CV249D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

April 5, 2002.

Bonnie Bridgers Smith, Forman, Perry, Watkins, Krutz & Tardy, PLLC, Jackson, MS, for Plaintiff.

Bennie L. Jones, Jr., Law Offices of Bennie L. Jones, Jr. & Associates, West Point, MS, for Defendant.

## OPINION DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY

DAVIDSON, Chief Judge.

Presently before the court is the Defendant's motion to dismiss and the Defendant's motion to stay proceedings pending discovery on the issues of whether the notice of arbitration and arbitration agreement governed by the Federal Arbitration Act can be set aside on sufficient grounds. Upon due consideration, the court finds the motions are not well taken and shall be denied.

### A. Factual and Procedural Background

On or about February 9, 1999, the Defendant, Rainard Sanford (Sanford), obtained a consumer loan from the Plaintiff, First Family Financial Services, Inc. (First Family), at their branch office in Tupelo, Mississippi. In conjunction with his loan, Sanford executed various loan documents including an Arbitration Agreement. Subsequently, Sanford, among others, filed suit against First Family in the Circuit Court of Noxubee County, Mississippi (underlying action). On or about June 28, 2001, First Family filed their Complaint for an order compelling arbitra-

tion in this court pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4.

In the underlying action, Sanford alleges various theories of liability including negligence, bad faith, fraud and breach of fiduciary duties in connection with his consumer loan and his purchase of insurance in connection with that loan. The Plaintiffs in that action are seeking One Million Dollars in compensatory damages and Five Million Dollars in punitive damages.

### B. Motion to Dismiss Standard

In a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994)). In deciding whether dismissal is warranted, the court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982).

### C. Arbitration Agreement

The parties do not dispute that their Arbitration Agreement contains the following provisions:

In consideration of the mutual promises made in this agreement, you and we agree that either you or we have an absolute right to demand that any dispute be submitted to an arbitrator in accordance with this agreement. If either you or we file a lawsuit, counterclaim, or other action in a court, the other party has the absolute right to demand arbitration following the filing of such actions.

ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, either you or we may require that such dispute be submitted to an arbitrator in accordance with this agreement. If either party demands arbitration, the arbitrator's decision will be final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to continue a lawsuit, counterclaim, or other action in court, including the right to a jury trial, in the event the other party exercises the right to demand arbitration pursuant to this agreement.

DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;

- any negotiations between you and us;

- any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement;

- any claim or dispute based on a federal or state statute; and

- any claim or dispute based on an alleged tort.

. . . . .

You agree that we do not have to initiate arbitration before exercising our remedy of repossession or non-judicial foreclosure, if applicable, and you have no right to demand arbitration of a repossession or a non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of the remedy of repossession or non-judicial foreclosure, however, is subject to arbitration in accordance with this agreement.

### D.  Sanford's Motion To Dismiss

Sanford now brings this motion to dismiss. He argues[1] that the Arbitration Agreement is void because it (1) is a contract of adhesion; (2) is unconscionable; (3) denies his right to a jury trial; (4) contains exorbitant arbitration fees; (5) violates the Insurance Commissioner's policy on arbitration agreements in insurance contracts;[2] and (6) venue is improper.

### 1.  Adhesion and Unconscionability

First, Sanford claims that the parties Arbitration Agreement was both adhesive and unconscionable. He fails, however, to argue any facts to support his allegations. His only claim in his affidavit is that he was not told what arbitration meant. He does not allege that he was denied an opportunity to read the terms of the Agreement. In addressing Sanford's claims of adhesion and unconscionability regarding the Arbitration Agreement, the court finds that the Arbitration Agreement is not unconscionable.

In determining whether an agreement to arbitrate is unenforceable due to unconscionability, the court refers to state law. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). Under Mississippi law, a court may refuse to enforce a contract, or any clause of a contract, that is found to have been unconscionable when made. *See* Miss.Code Ann. § 75–2–302. Mississippi law defines an unconscionable contract as "one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." *Entergy Mississippi, Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss.1998). Under Mississippi law, there are two types of unconscionability; procedural and substantive. *York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss.1984). A party may establish procedural unconscionability if he/she proves "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic lan-

---

**1.**  Sanford also claims that the Arbitration Agreement violates his equal protection rights. However, he fails to argue this issue in his brief, assert any facts supporting such a claim or cite even one case to support this theory. Accordingly, the court finds this claim is without merit.

**2.**  Sanford does not argue this issue in his brief, but rather refers to and incorporates a motion to dismiss filed in the matter of *American Heritage v. Jessie Colvin,* Civil Action No. 1:00CV381; in the Northern District of Mississippi. Said motion was denied by this court by order dated October 2, 2001.

guage, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *York,* 585 F.Supp. at 1278. A party may prove substantive unconscionability if he/she proves that the terms of the arbitration clause were oppressive. *Id.*

Here, while Sanford alleges in general and conclusory terms that the parties' Arbitration Agreement is unconscionable, no evidence is presently before the court that supports that conclusion. Sanford does not assert a lack of ability to read or understand the Arbitration Agreement, or that any behavior on the part of First Family or their sales personnel prevented a careful reading of the Agreement.

■■■ Moreover, the court finds that the Arbitration Agreement was not buried in fine print in the middle of the contract, but rather was a separate document, with the words "ARBITRATION AGREEMENT" placed at the top of the page in large, bold letters that are easy to see. "In *Smith v. EquiFirst Corp.* 117 F.Supp.2d 557 (S.D.Miss.2000), the court held that an arbitration agreement between borrowers and a lender was not procedurally unconscionable based on the borrowers' lack of knowledge of the agreement, where the arbitration agreement was set forth in a separate document which was plainly described as an arbitration rider in large, easy-to-read print, the agreement was separately signed by the borrowers, and the borrowers did not claim that they were prevented from reading the document or from asking questions about the document. Failure by a party to inform himself of what he is signing does not make the agreement unconscionable or unenforceable." *Smith,* 117 F.Supp.2d at

564–65. As a matter of Mississippi law, a contracting party is under a legal obligation to read a contract before signing it. *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.,* 584 So.2d 1254, 1257 (Miss.1991); *Koenig v. Calcote,* 199 Miss. 435, 25 So.2d 763 (1946); *In re Cajun Electric Power Cooperative, Inc. v. Riley Stoker Corp. et al.,* 791 F.2d 353 (5th Cir.1986); *Pedersen v. Chrysler Life Ins. Co.,* 677 F.Supp. 472 (N.D.Miss.1988).

Sanford cites the Mississippi case of *Timberlands Operating Co., Ltd. v. Denmiss Corp.,* 726 So.2d 96 (Miss.1998), for the proposition that the "Complaint to Compel Arbitration should be denied and the contracts revoked and voided and the case should be remanded back to Noxubee County Circuit Court for trial on the merits."[3] Sanford argues that since the court in *Timberlands* took note of the fact that the parties were of equal bargaining power, that it infers that when two parties do not have equal bargaining power, an arbitration agreement is void. The court does not agree. In a recent Fifth Circuit opinion, the court, while referring to an arbitration agreement in a mobile home sales contract, stated that "although there may have been an imbalance in the relative sophistication of the parties, the imbalance was insufficient on its own to render the [arbitration] agreement unconscionable." *Fleetwood Enterprises, Inc. v. Gaskamp,* 280 F.3d 1069, 1077 (5th Cir.2002). Accordingly, the court finds Sanford's argument without merit.

This language, combined with Sanford's lack of evidence as to unconscionability, leads the court to find that Sanford has failed to establish that the parties' Arbitra-

---

**3.** The court notes that Sanford has not filed a motion to remand or argued any relative facts or controlling case law to support such a motion. Accordingly, this court shall not address or consider remanding this case to the State court.

tion Agreement is unenforceable on grounds of unconscionability.

### 2. Right to a Jury Trial

Sanford next contends that the parties' Arbitration Agreement abridges his right to a jury trial. While the FAA does allow for parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement or the failure, neglect or refusal to perform the agreement, it is well settled that "[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one." *Dillard v. Merrill Lynch, et al.*, 961 F.2d 1148,1154 (5th Cir.1992) (holding that Defendant "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations [surrounding the arbitration agreement] proved to be true."); 9 U.S.C. § 4 (1999). In addition, Sanford "must produce at least some evidence to substantiate his factual allegations." *Dillard*, 961 F.2d at 1154.

Here, Sanford has proffered no evidence whatsoever supporting the conclusion that a jury trial is warranted in this action. Further, directly above where Sanford signed, the Arbitration Agreement clearly stated, "READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN· OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION." As such, the court finds that a jury trial is not required.

### 3. Arbitration Fees

Next, Sanford argues that due to the exorbitant costs involved with arbitration under the Agreement he should not be required to arbitrate.

■ First, this argument was rejected by the United States Supreme Court in *Green Tree Financial Corp.—Ala. v. Randolph*, 531 U.S. 79, 82, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000). In *Randolph*, the court held that neither the possibility that a party to arbitration may be required to pay ·arbitration costs, nor an arbitration clause's silence as to costs renders an arbitration clause per se unenforceable.

■. Further, First Family, as it has done with respect to other arbitration plaintiffs, has· obliged themselves to pay any arbitration filing fee and the arbitrator's fees and expenses in connection with the arbitration of Sanford's claims. Thus, Sanford will incur no filing fee and will not be required to pay any portion of the arbitrator's fee. Accordingly, Sanford's argument concerning arbitration costs is without merit and does not provide a basis upon which he may avoid arbitration.

### 4. Insurance Commissioner's Policy on Arbitration Agreements in Insurance Contracts

Sanford further seek to dismiss the Complaint by relying on an affidavit of the Mississippi Insurance Commissioner, George Dale, in which he states that he has not approved the use of arbitration agreements in insurance contracts. This proposition has been previously rejected by this court. *See American Heritage Life Ins. Co. v. Harmon*, 147 F.Supp.2d 511 (N.D.Miss.2001). Further, the court would point out that the Arbitration Agreement in question is involved in a loan transaction, not an insurance contract. Based on the these facts, plus Sanford's failure to cite even one relevant case which advances his theory, the court finds this argument is without merit.

### 5. Venue

■ Sanford, in his affidavit, claims that he is unable to travel to and from arbitration due to the excessive travel expenses. In his brief, he maintains, without explana-

tion, that the "forum/venue [is] inconvenient." He however, fatally fails to cite even one case in support of this argument. The court finds that the Arbitration Agreement specifically states that "the arbitration will take place in the county where you live unless you and we both agree to another location." Thus, Sanford will be required to travel no further to participate in arbitration than he would have been willing to travel to have his case heard before a jury.

### E. Sanford's Motion to Stay

Sanford next moves the court to stay the "complaint to compel arbitration pending completion of discovery on the issue(s) of whether the notice(s) of arbitration and arbitration agreement(s) governed by the Federal Arbitration Act can be set aside on sufficient grounds." He argues that he should not be forced to arbitrate prior to having an opportunity to undergo discovery. The court is not persuaded.

The United States Supreme Court has made it clear that Sections 3 and 4 of the FAA "call for an expeditious and summary hearing with only restricted inquiry into factual issues." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983). In *Moses*, the Court pointed out that delay by the district court was clearly erroneous and contrary to the strong policies embodied in the FAA. *Moses*, 460 U.S. at 22, 103 S.Ct. at 940.

Further, in light of the foregoing opinion regarding Sanford's motion to dismiss, the court is of the opinion that the Arbitration Agreement is not voidable. Accordingly, a stay is not necessary in this matter.

### F. Conclusion

For the above and foregoing reasons, Sanford's motion to dismiss and motion to stay proceedings are both denied.

A separate order in accordance with this opinion shall issue this day.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY

Pursuant to an opinion issued this day, it is hereby ORDERED that:

1. the Defendant's motion to dismiss (docket entry # 8) is DENIED; and

2. the Defendant's motion to stay proceedings (docket entry # 9) is DENIED.