Robert SHEGOG Plaintiff

v.

UNION PLANTERS BANK, NA-
TIONAL ASSOCIATION, et
al. Defendant

No. CIV.A. 303CV496LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 13, 2004.

Orlando R. Richmond, Sr., Richmond, Simon & Abston, PLLC, Columbus, Willie T. Abston, Richmond, Simon & Abston, Jackson, MS, for Plaintiff.

William J. Little, Jr., Lentz & Little, PA, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Defendant Union Planters Bank N.A. (Union Planters) seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on its counterclaim against plaintiff Robert Shegog to compel arbitration. Shegog opposes the motion, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that Union Planters' motion is well taken and should be granted.

Shegog, a Mississippi resident, originally brought this action in the Circuit Court of Hinds County, Mississippi. The core allegation of his complaint is that a representative of Union Planters, a Tennessee corporation, fraudulently represented to him that credit life insurance was required in connection with a loan he obtained from Union Planters in May 2002. Union Planters removed the action to this court on April 7, 2003 on the basis of diversity jurisdiction, see 28 U.S.C. § 1332, and promptly filed a counterclaim, seeking an order from the court requiring Shegog to arbitrate his claims against it.[1] In response to Union Planters' present motion for summary judgment as to its counterclaim, Shegog acknowledges that the documents signed by him in connection with his loan from Union Planters included provisions that require arbitration of all disputes concerning the loan transaction, but he argues that the arbitration agreement should be voided for one or more of three reasons, namely that the agreement is both substantively and procedurally unconscionable and that it was procured by fraud. The court, however, is not persuaded that there exists any impediment to compelling arbitration of Shegog's claims.

Congress provided in the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (FAA), that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of this section is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 4 of the FAA provides for entry of an order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. Under § 4,

---

**1.** Union Planters additionally seeks to recover its attorneys' fees and costs incurred in connection with enforcing the terms of the security agreement entered into by the parties.

The court is unable to rule on this motion at this time, as the purported affidavit offered in support thereof has not been notarized.

"if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court 'being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,' shall direct the parties to arbitrate.' If, on the other hand, 'the making of the arbitration agreement or the failure ... to perform the same be in issue, the court shall proceed summarily to the trial thereof.' "

*Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941 (quoting § 4).

■ The now familiar two-step inquiry applicable to motions to compel under § 4 requires that the court first "determine whether the parties agreed to arbitrate the dispute in question, [which] ... involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp,*

*Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996). "The second step is to determine 'whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims.' " *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

Here, in support of its motion for summary judgment, Union Planters has submitted copies of a promissory note and a security agreement, which were executed by Shegog and a Union Planters representative in connection with Shegog's $11,000 loan from Union Planters. Both of the documents were signed by Shegog and contain an identical arbitration provision requiring that the lender and Shegog arbitrate "all disputes, claims and controversies ... arising from this Note or otherwise, including without limitation contract and tort disputes...." and both were signed by Shegog.[2] According to Union Planters, the existence of these two written, signed arbitration agreements, the

**2.** The arbitration provision in the promissory note is representative of both documents and provides as follows:

Arbitration: I and Lender agree that all disputes, claims and controversies between us, whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon the request of either party. No act to take or dispose of any property securing this Note shall constitute waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitations, obtaining injunctive relief or a temporary restraining order; invoking the power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Com-

mercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning property securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the property securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed as the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

fact that the parties' transaction involved "commerce" and the fact that Shegog's state law tort claims are covered by the agreements,[3] all demonstrate that summary judgment·on its counterclaim is appropriate. For his part, Shegog does not dispute that he signed the agreements or that the claims set forth in his complaint are within the ambit of the arbitration agreement. Instead, he maintains that the agreement is unenforceable because it is procedurally and substantively unconscionable and was procured by fraud. The court finds no merit in his position.

■ As to his claim of fraud, the distinction between Shegog's fraud argument and his substantive unconscionability argument is not entirely clear to the court. In his brief, Shegog addresses the former argument, charging generally that "Union Planters, by and through, its employees, breached its duty to the Plaintiff throughout the loan process through its material misrepresentation, concealment of material facts, and dishonest business practices."

However, the proof he has presented in support of this argument, the affidavit of Dexter Young, the former Union Planters Branch Manager with whom Shegog dealt, does not address fraud in relation to the arbitration agreement specifically, but rather speaks to Union Planters' allegedly improper efforts to sell credit life insurance to all of its customers. With reference to the arbitration provision, Young states in his affidavit that he had not been informed about the arbitration provision, that he had not informed his subordinates of it and that he did not mention or discuss the same with Shegog. It is clear, then, that inasmuch as Shegog's fraud claim does not relate specifically to the arbitration agreement but rather to the agreement as a whole, this claim must be heard by the arbitrator. *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 472 (5th Cir.2002) (articulating separability principle, and stating that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute").[4]

---

3. Specifically, the complaint sets forth the following claims: fraud, negligent hiring, wanton supervision, breach of fiduciary duty and negligent misrepresentation.

4. The Fifth Circuit's recent opinion in *Will–Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir.2003), confirms the court's conclusion in this regard. In *Will–Drill,* the court explained as follows:

> First, it is clear that because arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration. We agree with those circuits which have included claims that the signature is forged or the agent lacked authority to bind the principle in this category. *On the other hand, where parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator.* Only if the arbitration clause is attacked on an independent basis can the court decide the

dispute; otherwise, general attacks on the agreement are for the arbitrator. (Emphasis added).

The court elaborated on the reasoning underlying its conclusion, stating:

> Where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract.
>
> We reject the argument that where there is a signed document containing an arbitration clause which the parties do not dispute they signed, we must presume that there is a valid contract and send any general attacks on the agreement to the arbitrator. The base point to which the analysis inevitably returns is that the separability doctrine rests on the assumption that there is an underlying agreement. That one of the parties later disputes the enforceability of that agreement does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the decision to arbitrate disputes arising out of the agreement. The existence of this agreement provides the arbitrator

■ The court turns now to plaintiff's remaining arguments. Under Mississippi law, procedural unconscionability exists where the plaintiff proves " 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.' " *First Family Financial Services, Inc. v. Sanford,* 203 F.Supp.2d 662, 666 (N.D.Miss.2002) (quoting *York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss.1984)). On the other hand, a plaintiff may prove substantive unconscionability by demonstrating that the terms of the arbitration clause are oppressive. *Id.* "That is, if the arbitration agreement, as written, would necessarily operate in such a way as to have an unconscionable effect, it is unconscionable." *Pridgen v. Green Tree Financial Servicing Corp.,* 88 F.Supp.2d 655, 658 (S.D.Miss.2000).

■ Here, under the heading of procedural unconscionability, Shegog catalogs ten reasons that "no reasonable man would engage in business dealings with a corporate giant such as ... Union Planters." The first five relate to alleged improprieties by Union Planters in connection with the sale of credit insurance, and therefore, under the principle of separability addressed *supra,* are appropriately addressed, not to the court, but to the arbitrator. The same is true as to Shegog's sixth reason, which charges a policy by Union Planters to have customers come to the bank to complete their loan transactions at a time when the bank was sure that the customers would be pressed for time and would not have the opportunity to study or ask about the contract's terms, particularly the arbitration agreements "embedded" in the loan documents. Plaintiff's proof, however, does not bear this out. While Young's affidavit states that Union Planters did employ such a tactic, Young states that it was for the purpose of inducing clients to purchase insurance.[5] Clearly, then, this argument goes to the contract as a whole and not specifically and singularly to the arbitration agreement.

■ Relating more specifically to the arbitration agreement, Shegog, relying on the Mississippi Supreme Court opinion in *East Ford, Inc. v. Taylor,* 826 So.2d 709 (Miss.2002), complains that "Union Planters did not advise its employees to mention or explain the meaning of the arbitration agreement"; "No employee or representative of ... Union Planters discussed the arbitration agreement" with him at any time during the loan process; (3) he was not aware that the loan documents presented to him contained an arbitration agreement; and (4) he had no legal training and did not know the effect of the arbitration agreement when he signed it.

In *East Ford,* the Mississippi Supreme Court upheld the circuit court's determination that an arbitration agreement in a car loan agreement was procedurally unconscionable. 826 So.2d at 716–17. The lower court's finding of procedural unconscionability was based on the facts that the arbitration agreement was pre-printed in the contract and that it was in very fine print and not bold-faced when other con-

---

with the authority required to decide whether the agreement will continue to exist. Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions as if the agreement never existed, the agree-

ment existed long enough to give the arbitrator the power to decide the dispute.

5. Again, Young stated he was not aware of and did not make his employees aware of the existence of the arbitration agreements in the loan documents.

tract terms were. *Id.* Here, although the arbitration clauses at issue were pre-printed in the loan documents, nevertheless, and despite Shegog's assertion to the contrary, the provision in both the note and the security agreement are headed in bold print "Arbitration Agreement," and both provisions are entirely readable.[6] Similarly, the court is not persuaded that Shegog's lack of legal training renders these arbitration provisions void. Simply put, Shegog does not complain that he was prevented from reading the loan papers (or even that he did not read the papers)[7], and both the note and security agreement recite, in regular-sized font, that both parties waived their rights to a jury trial "in any action, proceeding, or counterclaim brought by any party" against the other. In the court's opinion, formal legal training is not needed to understand the import of these statements.

■ Having concluded that the arbitration agreements at issue here are not procedurally unconscionable, the court turns to Shegog's argument that the arbitration agreements are substantively unconscionable because "Union Planters Bank was financially rewarded while [he] was financially burdened. The Defendants' . . . goal throughout the loan process was to gain a profit, take advantage of plaintiff, and protect itself." To the extent that this is an articulation of a substantive unconscionability argument, it, like the fraud argument, relates to the contract as a whole and not specifically to the arbitration agreement and it is therefore not within the province of this court to decide its merits.

Based on the foregoing, it is ordered that defendant's motion for summary judgment on its counterclaim is granted and it is therefore ordered that plaintiff must arbitrate, rather than litigate, the claims asserted in his complaint in this cause. Accordingly, his complaint will be dismissed.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**6.** The arbitration agreement in the note is in bold print while the one in the security agreement is in regular font.

**7.** The court notes that even had Shegog complained that he did not read the loan documents, "he is, [nonetheless], charged with knowing the contents of any documents that he executes." *Russell v. Performance Toyota, Inc.,* 826 So.2d 719, 726 (Miss.2002).